(No. 23959.—

EMMA E. DRY *et al.* Appellants, *vs.* GLADYS C. ADAMS *et al.* Appellees.

*Opinion filed October 15, 1937—Rehearing denied Dec. 8, 1937.*

ORR, J., dissenting.

ROSWELL B. O'HARRA, for appellants.

WILLIAM J. LONG, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiffs, three daughters and two grandchildren of William H. Robinson, deceased, filed their suit in the circuit court of Schuyler county seeking partition of one hundred eighty acres of land, and to remove, as a cloud on the title, a deed made by Robinson in his lifetime, conveying to two other daughters, Gladys C. Adams and Leonette

Thannert, defendants, sixty acres of the land involved. Partition of the remaining one hundred twenty acres was not contested. The sole question at issue was whether the deed from Robinson to his daughters conveying the sixty acres passed title to them immediately or was invalid for want of delivery. The circuit court found that the deed was delivered by Robinson so as to effect a present conveyance of a future interest during his lifetime and denied partition as to this particular parcel of land. From this portion of the decree, four of the five plaintiffs have perfected an appeal to this court and the cause is now here for consideration.

The deed in controversy is a statutory form of a warranty deed, dated July 21, 1933, signed and sealed by the grantor, William H. Robinson. It contained the following provision: "This deed shall not be in effect until my death." Aside from the formal proof consisting of the deed itself, and the fact that it was recorded after the death of Robinson, the testimony of one Horney, produced as a witness by plaintiffs, is the only material testimony in the record. Horney, a hardware merchant, resided in Littleton. He testified that he was a notary public, prepared the deed, a copy of which was shown him, and, as a notary, took the acknowledgment of Robinson, and that, after the deed was executed, it was sealed in an envelope and put in his safe. The witness continued that Robinson told him to hold the deed and deliver it to Mrs. Adams after his death. Neither Mrs. Thannert nor Mrs. Adams was present when the deed was executed. The notary turned the deed over to the latter after her father's death in June, 1934. Upon further interrogation by counsel for plaintiffs, Horney stated that Robinson did not tell him to turn the deed over to Mrs. Adams after his death, but, so far as he remembered, he was to hold it until that time. On cross-examination, he added that Robinson told him he did not want the deed to take effect until after his death, and that it was on his

(the witness') suggestion the clause was inserted that the deed was not to take effect until the happening of the event specified. According to Horney, this provision was incorporated in the deed to prevent the grantees from taking possession of the property before their father's death. The witness further testified that he understood from what was said and done at the time, however, he was to deliver it after the death of Robinson. Gladys Adams testified, but her testimony had nothing to do with the facts attending the execution and delivery of the deed in controversy.

Considering the relationship of the parties and the surrounding circumstances, it appears that the intention of the deceased was to provide for a voluntary settlement of the premises described in the deed in favor of his daughters, Gladys C. Adams and Leonette Thannert. The intention of the grantor, under such circumstances, is a controlling element in arriving at the proper conclusion as to whether there was a delivery of the deed. The directions to the notary to keep the deed in his possession in a safe place and to deliver it upon his death were sufficient to constitute a delivery, and could well be interpreted as an instruction to the notary to keep the document safe for the grantees, rather than for the grantor. (*Thompson* v. *Calhoun,* 216 Ill. 161.) A manual transfer of the deed from the grantor to the grantee is not essential to a valid delivery. (*Hoyt* v. *Northup,* 256 Ill. 604.) Plaintiffs insist, however, that the grantor, under the facts as shown in this case, could have demanded a return of the deed, and that the notary was purely the agent of the grantor. On the other hand, it could, with equal force, be argued that when the grantor executed the deed and delivered it to the notary public he intended to relinquish all right, title and interest in the property in favor of the grantees named therein. This intention is fortified by the fact that at no time during his lifetime did he make any effort to recall the deed, but permitted it to remain in the possession of the notary public,

in escrow, until the fulfillment of the event, namely, his death. (*McClugage* v. *Taylor*, 352 Ill. 550.) The provision in the deed that it was not to take effect during the lifetime of the grantor affords strong presumptive proof that Robinson intended the title to vest immediately in the grantees as named, otherwise there would have been no necessity for the provision purporting to reserve a life estate. (*Baker* v. *Hall*, 214 Ill. 364.) The rule is, that in the case of a deed of voluntary settlement the burden is on the grantor, or those claiming through him, to show want of delivery. *Standard Trust and Savings Bank* v. *Carlson*, 315 Ill. 451.

An analysis of the testimony of the notary public who held the deed and before whom the transaction took place, might well be interpreted to show an intention on the part of Robinson to create a present title in the grantees which was to become effective upon his death. Horney's testimony was to the effect that, in the first instance, he had been told to deliver the deed upon Robinson's death. On further questioning by the parties who produced him as a witness, he stated that there was no express direction so to do. Upon cross-examination, however, he testified that from what took place, which included the acts and conversations, it was his understanding that such was the fact, and that he was to deliver the deed to Mrs. Adams upon the death of the grantor. Without reference to the general rule that one producing a witness is bound by his testimony, there is ample proof from his testimony that he was to deliver the deed upon the death of the grantor, and the chancellor was justified in so finding.

For the reasons stated in this opinion the decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. JUSTICE ORR, dissenting:

This opinion turns largely upon the interpretation given to the testimony of one witness, L. L. Horney. He was the only person who testified to the circumstances surround-

ing the making of the deed. In substance he related that Robinson came to his store to see about this particular deed; that Robinson then told witness he wanted to change the deed he had first made to Mrs. Adams and wanted to make a new deed to Mrs. Adams and Leonette Thannert, with some provision therein for a life estate. Robinson further said he did not want the deed to take effect until after his death. Horney prepared the deed and Robinson told him to hold it until after his death, but did not give Horney any other instructions concerning it. Witness said he had some discussion with Robinson about the execution of this deed; that these children might be able to take possession before his death and that some provision should be made and that was done by inserting the quoted provision in the deed. Horney said the reason the provision was inserted in the deed was to protect Robinson from being dispossessed of his property before his death. Robinson never said what was to be done with the deed after his death; he only wanted to make sure the deed would not take effect before his death. Robinson had witness make two deeds—the first one was taken up by him, the last one is the deed in dispute. Mrs. Adams and Leonette Thannert were not aware of the existence of the deed wherein they were grantees until after the death of their father, when Horney gave the deed to Mrs. Adams.

In a deed a grantor is presumed to intend what his words import, and less latitude is permitted in construing a deed than a will. (*Coogan* v. *Jones,* 278 Ill. 279.) The intent of the grantor will be given effect if not contrary to some positive rule of law. (*Woods* v. *Seymour,* 350 Ill. 493.) A deed must take effect upon its execution and delivery or not at all. (*Patten* v. *Knowe,* 354 Ill. 156.) It must be kept in mind in deciding the issue that the deed was the unilateral act of Robinson and not the result of negotiation between the parties. The words, "This deed shall not be in effect until after my death" stand in need

of outside aid.in construing them. Extraneous and surrounding circumstances of the execution of the deed can be used in such cases. (*Dick* v. *Goldberg,* 295 Ill. 86; *Cutler* v. *Garber,* 289 id. 200.) We derive such aid here from the testimony of Horney.

As to the first deed, Horney was unquestionably the agent of Robinson, for Horney relinquished this deed to Robinson upon request. As to the second deed—the one in issue—Horney was also undoubtedly the agent of Robinson in its preparation and execution. Whether Horney continued as the agent of Robinson after the deed was left with him, or became the agent of the grantees, by designation of the grantor or by operation of law, must be determined from Robinson's intention as to when the deed should·be delivered.

The primary intent of Robinson was that the two daughters should receive the sixty acres in such a manner that they could not dispossess him of it. Robinson was insistent that this should be accomplished by Horney phrasing the deed so it would not take effect during his lifetime. Regardless of whether the quoted language under the circumstances reserved a life estate, the fact remains that the deed was to take effect only after Robinson died. Robinson did not at any time, or in any manner, instruct or empower Horney to do anything with the deed, except to keep it until he (Robinson) died. In the light of the understanding of their relations concerning the first deed, the sole instruction to Horney, to keep the second deed until Robinson died, does not, of itself, connote the imposition of any different duty upon Horney respecting this second deed. From the evidence Horney appears as nothing more than the custodian of the deed for safe-keeping. His only obligation or duty was to Robinson.

The death of Robinson terminated the agency of Horney, as the evidence fails to show that he had any duty to perform after the death of his principal. The de-

406

livery of the deed to Gladys thereafter, was the independent act of Horney. The case of *Hoyt* v. *Northup*, 256 Ill. 604, is cited on the theory that delivery of the deed is presumed. In that case the facts were quite different, and the evidence disclosing the intentions of the grantor respecting delivery was more voluminous and certain, than in the present case. There it was shown the gift by deed was really made in payment of notes, one of them outlawed, given in satisfaction of valuable services rendered the grantor during a course of years. The presumption of delivery involving a deed of voluntary settlement should not be allowed to stand in this case against convincing evidence to the contrary. The burden was upon appellees in this case to establish the delivery of the deed to Horney to be a constructive delivery to the two daughters. In my judgment they failed, and the circuit court erred in decreeing that the deed was constructively delivered.